Filed 3/16/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| TIMOTHY DENIKE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MATHEW ENTERPRISE, INC.,<br><br>    Defendant and Appellant. | H046420<br>(Santa Clara County<br>Super. Ct. No. CV273438) |

In June 2014, Timothy DeNike purchased a 2014 Jeep Wrangler with a hardtop from Mathew Enterprise, Inc., doing business as Stevens Creek Chrysler Jeep Dodge (SCJ).  Soon after the purchase, DeNike discovered that the vehicle was originally manufactured as a soft top and that the hardtop had been installed at some point after it left the factory.  DeNike ultimately filed a lawsuit against SCJ and a jury found in favor of DeNike on his claims under the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.),[1] the Song-Beverly Consumer Warranty Act (Song-Beverly Act) (§ 1790 et seq.), and for intentional misrepresentation.  The trial court subsequently issued a permanent injunction against SCJ and, in a postjudgment order, awarded DeNike attorney fees.[2]

---

[1] Unspecified statutory references are to the Civil Code.

[2] SCJ has separately appealed from the postjudgment order of attorney fees and we dispose of that appeal in a separate nonpublished opinion (*DeNike v. Mathew Enterprise, Inc.* (Mar. 16, 2022, H046718)).

In addition to receiving the parties' briefs, we granted an application by the California New Car Dealers Association (Association) to file a brief as amicus curiae. DeNike filed a response to Association's brief.

On appeal, SCJ argues: (1) the trial court erred by (a) permitting the jury to consider DeNike's claim for restitution under the CLRA, and (b) excluding evidence of its offers of correction under the CLRA; (2) there was insufficient evidence of reasonable reliance to support the verdict on the intentional misrepresentation cause of action; (3) the trial court misinstructed the jury on the Song-Beverly Act cause of action; and (4) the trial court erred in granting DeNike's request for injunctive relief under the CLRA.

As set forth below, we agree that DeNike's claim for restitution under the CLRA was barred, but reject the remainder of SCJ's arguments.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In May 2014, DeNike began searching for a soft top Jeep Wrangler to replace the one he owned but intended to give to his son. In June, a salesman at SCJ returned DeNike's call and told him that he could procure a Jeep Wrangler which met his specifications from another dealership. DeNike agreed to travel by train from his home in Sacramento to San Jose on June 14 to pick up the vehicle which he would then drive home.

On June 13, the salesman called DeNike and told him he could not get the Jeep from the other dealership. The salesman said he had a vehicle at SCJ that fit DeNike's requirements except that it was a hardtop rather than a soft top. DeNike asked if everything on the vehicle was "factory installed"[3] and the salesman assured him it was.

---

[3] DeNike took notes regarding his conversations with various car dealers on his calendar and his notes from the conversation with SCJ on June 13 indicate that he asked whether everything on the vehicle was "dealer installed."

DeNike took the train to San Jose the next day and the salesman gave him a ride to SCJ. DeNike took the vehicle for a test drive, but noticed that it was dusty and had no stickers on it other than a temporary registration. DeNike asked the salesman about the new vehicle stickers and the salesman said he would look for them.

Following the test drive, DeNike went to the finance office and signed the purchase documents. The salesman brought DeNike out to the vehicle, which had been washed, and handed DeNike the vehicle stickers. DeNike did not review the stickers, but placed them in a folder with the purchase documents and started driving home.

During the drive to Sacramento, DeNike tried using the wipers to clear bugs from the windshield, but no fluid came out. When he stopped at a gas station, DeNike put water in the fluid reservoir but did not try the wipers again. About a week later, when DeNike tried to fill the reservoir again, he heard water splashing underneath the car and saw water on the ground. He tried the rear wiper, but it did not work at all. DeNike then made an appointment with a Jeep dealership in Sacramento.

At the Sacramento dealership, DeNike learned that the vehicle had left the factory as a soft top and that the hardtop had been subsequently (and improperly) installed. DeNike decided that he wanted to return the vehicle.

DeNike contacted the salesman at SCJ and told him he wanted to return the vehicle because the hardtop was not factory installed as promised. DeNike looked at the stickers the salesman provided and saw that one of the stickers indicated that vehicle had a soft top. The "addendum sticker" did not list anything underneath the heading of "Dealer Installed Options." DeNike's efforts to resolve the situation over the telephone were unsuccessful.

On November 18, 2014, DeNike's counsel wrote to SCJ asking for rescission of the purchase agreement, payment of the vehicle loan, plus attorney fees and costs pursuant to the CLRA. The letter also informed SCJ that DeNike intended to seek injunctive relief as well.

3

On December 2, 2014, SCJ responded to DeNike's CLRA demand letter and offered to: (1) repair the vehicle if DeNike still wanted it, and provide a loaner vehicle while it was repaired; or (2) rescind the purchase agreement, refund all payments DeNike had made, pay off the remaining balance on the vehicle, reimburse DeNike for any repairs or out-of-pocket costs, and pay DeNike's "reasonable attorney's [*sic*] fees." The parties exchanged additional letters seeking to resolve the dispute, but negotiations ultimately failed when they could not reach an agreement on the amount of attorney fees.

DeNike filed a complaint against SCJ alleging violations of the CLRA, fraud by intentional misrepresentation and/or concealment, and violations of the Song-Beverly Act.

Following a trial, the jury found that SCJ violated the CLRA, made an intentional misrepresentation to DeNike (but did not commit fraud by concealment), and violated the Song-Beverly Act. The jury determined DeNike was entitled to an award of $36,192.79, consisting of $26,001.61 for restitution/rescission, plus incidental damages of $10,191.18.

Following a bench trial on DeNike's request for injunctive relief, the trial court enjoined SCJ from: "a. selling a new vehicle that has been modified, and/or had additions made to it, from its factory-delivered condition without an addendum sticker attached to the vehicle disclosing such modification and/or addition as required by law; and [¶] b. failing to disclose to a customer as required by law the fact or existence of a modification and/or addition having been made to a new vehicle from its factory-delivered condition before the customer enters into a written agreement to purchase the vehicle." The trial court further ordered SCJ to "implement policies, procedures, and training to apprise its employees of, and to ensure compliance with" the terms of the injunction.

SCJ timely appealed.

## II. DISCUSSION

### A. CLRA

SCJ argues the trial court, after ruling that its pretrial offer of correction under the CLRA was "reasonable" and "appropriate" thereby precluding "actual damages under the CLRA," erred by nevertheless instructing the jury on the CLRA. The trial court further erred by not allowing SCJ to introduce any evidence of its pre-litigation offers to remedy DeNike's complaints. In SCJ's view, the trial court misinterpreted the interplay between section 1780 and section 1782.[4] We agree.

#### 1. Relevant background

Prior to trial, the court reviewed the parties' "chain of correspondence" and concluded that DeNike could not pursue a claim for "actual damages" under the CLRA because SCJ made a "reasonable [] and appropriate" response to DeNike's CLRA demand letter. The trial court further ruled that the issue of "good faith" was also "out of the picture because it only goes to actual damages."

The trial court subsequently instructed the jury, over objection by SCJ, as to DeNike's CLRA claim as follows: "Any consumer who establishes that a person used or employed a method, act, or practice declared to be unlawful by the [CLRA] may rescind a contract and recover restitution. Rescission extinguishes a contract, terminates further liability, and restores the parties to their former positions by requiring them to return whatever consideration they have received." The jury verdict form included the

---

[4] Association echoes SCJ's argument that the court erred by allowing the jury to consider DeNike's claim for restitution under the CLRA. Association also goes further and urges this court to reject the contentions DeNike raised in his responding brief that a CLRA correction offer is not effective unless it is accepted by the consumer, and that a jury may properly decide equitable claims under the CLRA. We decline to address these arguments as they were not presented in SCJ's opening brief nor did DeNike cross-appeal on this question. (*Lance Camper Manufacturing Corp. v. Republic Indemnity Co.* (2001) 90 Cal.App.4th 1151, 1161, fn. 6 (*Lance Camper*) [court will not consider additional questions presented in amicus curiae brief].)

5

following question:  "What amount for restitution/rescission is Mr. DeNike entitled to for [SCJ's] violations of the [CLRA]?"

### 2. Statutory interpretation

" ' "Statutory construction is a question of law which requires the exercise of our independent judgment." [Citation.]'  [Citation.]  'We apply well-settled principles of statutory construction.  Our task is to discern the Legislature's intent.  The statutory language itself is the most reliable indicator, so we start with the statute's words, assigning them their usual and ordinary meanings, and construing them in context.  If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs.  On the other hand, if the language allows more than one reasonable construction, we may look to such aids as the legislative history of the measure and maxims of statutory construction.  In cases of uncertain meaning, we may also consider the consequences of a particular interpretation, including its impact on public policy.'  [Citation.]  ' "If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose." [Citation.] . . . "[A] construction making some words surplusage is to be avoided." [Citation.]  "When used in a statute [words] must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear." [Citations.] Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole.' (*Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230.)" (*Department of Corrections & Rehabilitation v. State Personnel Bd.* (2014) 227 Cal.App.4th 1250, 1256.)

### 3. Analysis

In 1970, the Legislature enacted the CLRA "to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." (§ 1760.)  In order to achieve these ends, the "law was designed

6

'to provide affirmative remedies for consumers which will protect them from unscrupulous business practices while insulating responsible businessmen from spurious or vexatious lawsuits.' (Assem. Com. on Judiciary, Rep. on Assem. Bill No. 292 (1970 Reg. Sess.) Sept. 23, 1970.)" (*Benson v. Southern California Auto Sales*, *Inc*. (2015) 239 Cal.App.4th 1198, 1205 (*Benson*).) The CLRA's provisions "shall be liberally construed and applied to promote its underlying purpose." (§ 1760.)

Section 1780, subdivision (a) provides, in pertinent part, as follows: "(a) Any consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against that person to recover or obtain any of the following: (1) Actual damages, . . . (2) An order enjoining the methods, acts, or practices. (3) Restitution of property. (4) Punitive damages. (5) Any other relief that the court deems proper."

Section 1782, subdivision (b) provides: "[N]o action for damages may be maintained under Section 1780 if an appropriate correction, repair, replacement, or other remedy is given, or agreed to be given within a reasonable time, to the consumer within 30 days after receipt of the notice."

SCJ argues the prohibition of an "action for damages . . . under Section 1780" (§ 1782, subd. (b)) extends to the remedy of restitution. We agree.

Section 1782 does not define "action for damages," nor do its provisions describing the pre-filing notice/demand and corresponding corrective offer mention specific remedies to be prohibited. Instead, the statute is broadly written to cover any "appropriate correction, repair, replacement, or other remedy." (§ 1782, subd. (b).) As a result, it is reasonable to conclude that all of the section 1780, subdivision (a) remedies,

7

save for injunctive relief,[5] are encompassed within section 1782, subdivision (b)'s reference to an "action for damages . . . under Section 1780."

While it is true that damages and restitution are different remedies, serving different purposes, section 1780, subdivision (a)'s use of the broader term "any damage" followed by the narrower term "actual damages" within the list of specific potential remedies suggests that the CLRA takes a more expansive view of what constitutes "damages" pursuant to its terms.  In *Meyer v. Sprint Spectrum L.P.* (2009) 45 Cal.4th 634, the California Supreme Court, noting the juxtaposition of "any damage" and "actual damages" in section 1780, subdivision (a), explained that "the breadth of the phrase 'any damage' indicates a category that includes, but is greater than, 'actual damages,' i.e., those who are eligible for the remedy of 'actual damages' are a subset of those who have suffered 'any damage.' " (*Meyer*, *supra*, at p. 640.)  While not directly addressing the issue presented in this case, the Supreme Court's language in *Meyer* indicates it would view the notice required before " 'commencement of an action for damages' " (*id.* at p. 643) in section 1782, subdivision (a) as applying to more than just the particular remedies listed under section 1780, subdivision (a)(1) which include the word "damages."

Reading section 1782, subdivision (a) in this way is also consistent with the CLRA's other purpose, i.e., to "facilitate precomplaint settlements of consumer actions wherever possible." (*Outboard Marine Corp. v. Superior Court* (1975) 52 Cal.App.3d 30, 41, superseded by statute on another ground as stated in *Flores v. Southcoast Automotive Liquidators, Inc.* (2017) 17 Cal.App.5th 841, 851.)  The CLRA was enacted

---

[5] Pursuant to section 1782, subdivision (d), a consumer may bring an action for injunctive relief without first sending a CLRA demand letter.  Within 30 days of filing a suit for injunctive relief, the consumer can send notice of a claim for damages, and after waiting at least 30 days from the date of that notice, the consumer can "amend his or her complaint without leave of court to include a request for damages."  (*Ibid.*)

not just to "protect consumers against unfair and deceptive business practices" but also "to provide efficient and economical procedures to secure such protection." (§ 1760.) Avoiding litigation when appropriate corrective action has been proffered by the merchant, regardless of whether the relief is requested in the form of monetary damages or restitution of property, achieves this latter goal. (*Ibid*.)

If an appropriate offer of correction under section 1782, subdivision (b) applies only to bar claims for monetary damages, that provision's safe harbor is neutered. As in this case, the merchant can respond within the statutory timeframe with an offer of correction and still be sued under the CLRA, albeit not for "actual" or "punitive" damages. Precluding only claims for "actual" and "punitive" damages if an appropriate correction offer is made is meaningless because at the end of the proceedings on a claim for restitution under the CLRA, the prevailing consumer is in precisely the same position he or she would have been had the merchant's offer of correction been accepted. While such an outcome satisfies the CLRA's goal of protecting the consumer, it thwarts the CLRA's additional goal of avoiding unnecessary litigation.

In addition, reading section 1782, subdivision (a) to require notice only for claims seeking relief in the form of money damages, renders section 1782, subdivision (d) superfluous. If the phrase "an action for damages" is so limited, there would be no need to specifically exempt claims for injunctive relief from that notice requirement. By interpreting "an action for damages" to preclude all actions under the CLRA, except for claims for injunctive relief, we give effect to each provision of the statute and promote the goal of resolving disputes without litigation.

As a result, having found that SCJ's response to DeNike's CLRA demand letter was "reasonable [] and appropriate,"[6] the trial court erred in allowing DeNike's claim for restitution under the CLRA to proceed to the jury. On remand, the trial court shall vacate the judgment in favor of DeNike on his restitution claim under the CLRA and enter a new judgment in favor of SCJ on that cause of action.

*B. Evidence of SCJ's correction efforts*

Because we are directing that the trial court on remand enter judgment in SCJ's favor on DeNike's CLRA claim for restitution, SCJ's argument that the trial court erred in excluding evidence of its efforts to resolve DeNike's CLRA claims is moot.

*C. Sufficiency of evidence supporting misrepresentation verdict*

SCJ next contends that there was insufficient evidence to support the jury's verdict on DeNike's misrepresentation cause of action because DeNike did not show he reasonably relied on the representation that the vehicle had a "factory installed" hardtop.

Where an appellant argues that a particular verdict is not supported by sufficient evidence, our review "*begins and ends* with the determination as to whether, *on the entire record*, there is substantial evidence, contradicted or uncontradicted, which will support the determination." (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873-874.) "Substantial" refers to the quality, not the quantity, of the evidence. (*Roddenberry v. Roddenberry* (1996) 44 Cal.App.4th 634, 651.) "Substantial evidence is evidence that is 'of ponderable legal significance,' 'reasonable in nature, credible, and of solid value,' and ' "substantial" proof of the essentials which the law requires in a particular case.' " (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1006.) The testimony of a single witness may constitute substantial evidence as long as it is not physically impossible or inherently

_____

[6] The determination of whether an offer of correction under the CLRA is appropriate is within the trial court's discretion. (*Benson*, *supra*, 239 Cal.App.4th at p. 1207.) DeNike did not cross-appeal on the trial court's ruling on this issue.

improbable. (*People v. Ghobrial* (2018) 5 Cal.5th 250, 281; *In re Marriage of Mix* (1975) 14 Cal.3d 604, 614.)

In exercising substantial evidence review, an appellate court does not evaluate the credibility of the witnesses but defers to the trier of fact. (*Conservatorship of O.B.*, *supra*, 9 Cal.5th at p. 1008 [reviewing court "may not insert its own views regarding the credibility of witnesses in place of the assessments conveyed by the judgment"]; *Lenk v. Total-Western, Inc.* (2001) 89 Cal.App.4th 959, 968.) Similarly, the court does not reweigh the evidence, but will uphold a judgment that is supported by substantial evidence even if substantial evidence to the contrary also exists. (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631.)

In misrepresentation cases, "the issue of reliance is no less a question of fact than the question whether there were misrepresentations of material facts, so the jury's resolution of conflicting evidence upon this point is equally conclusive upon this reviewing court as are the findings that misrepresentations were made by defendant." (*Horn v. Guaranty Chevrolet Motors* (1969) 270 Cal.App.2d 477, 482-483.)

In completing the verdict form section addressing DeNike's claim of intentional misrepresentation, the jury found that DeNike reasonably relied on SCJ's false representation that the vehicle had a factory-installed hardtop. At trial, DeNike testified about his conversations with SCJ's salesman and the fact that he was not given the Monroney[7] sticker until just before he drove the vehicle home to Sacramento. DeNike also testified that, after learning that the hardtop had been installed after the Jeep Wrangler left the factory, he immediately took steps to return the vehicle and get his

_____

[7] The manufacturer of a new vehicle is required by law to affix a sticker, known as a Monroney sticker, to that vehicle. (15 U.S.C. § 1232.) The Monroney sticker must disclose, among other things, each accessory or item physically attached to the vehicle at the time of its delivery to the dealer and also displays the manufacturer's suggested retail price (MSRP). (*Ibid*.)

11

money back. The only direct contrary evidence offered by SCJ was DeNike's calendar entry in which he wrote "dealer installed" instead of "factory installed." SCJ also sought to persuade the jury that DeNike's reliance was unreasonable by eliciting testimony from DeNike that he viewed the Monroney stickers on vehicles at other dealerships, as well as that he was a "sophisticated car purchaser."[8] We presume the jury considered all of the conflicting evidence and, based on our review of the record, there was substantial evidence presented at trial to support the jury's finding that DeNike reasonably relied on SCJ's misrepresentation about the condition of the vehicle.

### D. Instructional error on Song-Beverly Act

According to SCJ, the trial court committed instructional error by failing to instruct the jury that DeNike had to show "impaired safety" in order to prevail on his cause of action for violation of an implied warranty under the Song-Beverly Act.[9] We disagree.

On DeNike's Song-Beverly Act cause of action, the trial court instructed the jury as follows: "Mr. DeNike claims that the 2014 Jeep Wrangler did not have the quality that a buyer would reasonably expect. This is known as breach of an implied warranty. To establish this claim, Mr. DeNike must prove all of the following: [¶] One, that Mr. DeNike bought a 2014 Jeep Wrangler from Stevens Creek Jeep. [¶] Two, that at the time

---

[8] SCJ's evidence of DeNike's sophistication consisted of his testimony that he had "[i]n the past" purchased perhaps 10 new vehicles and "five or six" of those purchases were from "new car dealerships." SCJ, in final argument, also reminded the jury that DeNike had done "extensive . . . research" before selecting the Jeep Wrangler, and that, based on his "[work] experience, knowledge, [and] education, . . . DeNike is one of the [] savviest people that we have seen."

[9] With respect to DeNike's Song-Beverly Act claim, Association's amicus brief argues adding equipment to a vehicle is not a Song-Beverly Act violation or does not constitute mislabeling under Song-Beverly Act. As before, we decline to address these arguments as they were not presented in SCJ's opening brief. (*Lance Camper*, *supra*, 90 Cal.App.4th at p. 1161, fn. 6.)

of the purchase, Stevens Creek Jeep was in the business of selling cars to retail buyers. [¶] [] [T]hree, that the 2014 Jeep Wrangler, A, was not adequately contained, packaged, and labeled; or, B, did not measure up to the promises or facts stated on the container or label. [¶] And, four, that Mr. DeNike took reasonable steps to notify Stevens Creek Jeep within a reasonable time that he wanted to return the 2014 Jeep Wrangler. [¶] Mr. DeNike's claim for breach of the implied warranty of merchantability is based solely on Steven Creek Jeep's alleged failure to have disclosed that it changed the Jeep from a soft top to a [hardtop].  The claim is not based on any other alleged damage to the Jeep."

"The legal adequacy of jury instructions is a legal issue subject to the de novo standard of appellate review."  (*Isip v. Mercedes-Benz USA, LLC* (2007) 155 Cal.App.4th 19, 24 (*Isip*).)  "A party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him which is supported by substantial evidence. The trial court may not force the litigant to rely on abstract generalities, but must instruct in specific terms that relate the party's theory to the particular case."  (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572.)

### 1. Waiver

As an initial matter, we address DeNike's claim that SCJ has waived its misinstruction argument by failing to include a copy of its proposed jury instruction or cite to that portion of the record where it objected to the instruction given by the trial court.  Contrary to DeNike's representation, SCJ's opening brief expressly cites to the pages of the reporter's transcript where the Song-Beverly Act instruction was discussed. Consequently, there was no waiver.

### 2. Analysis

The Song-Beverly Act, "[p]opularly known as the automobile 'lemon law' [citation] . . . is strongly pro-consumer[] [and] . . . 'should be given a construction calculated to bring its benefits into action.' " (*Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 990 (*Murillo*).)

13

To determine whether the jury was properly instructed on the implied warranty of merchantability under the Song-Beverly Act, we must examine the statute's definition of that term, keeping its remedial function firmly in mind. "As defined in the Song-Beverly Consumer Warranty Act, 'an implied warranty of merchantability guarantees that "consumer goods meet *each of the following*: [¶] (1) Pass without objection in the trade under the contract description. [¶] (2) Are fit for the ordinary purposes for which such goods are used. [¶] (3) Are adequately contained, packaged, and labeled. [¶] (4) Conform to the promises or affirmations of fact made on the container or label." (Civ. Code, § 1791.1, subd. (a).)' " (*Isip*, *supra*, 155 Cal.App.4th at p. 26, italics added.) "[T]he words of a statute are generally the most reliable indicator of legislative intent. [Citations.] We give the words of the statute their ordinary and usual meaning and view them in their statutory context. [Citation.] . . . 'If the statute's text evinces an unmistakable plain meaning, we need go no further.' " (*In re C.H*. (2011) 53 Cal.4th 94, 100.) " ' "Courts should give meaning to every word of a statute if possible, and should avoid a construction making any word surplusage." ' " (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1118.) Furthermore, "we will not read a requirement into a statute that does not appear therein." (*Moniz v. Adecco USA, Inc*. (2021) 72 Cal.App.5th 56, 79 (*Moniz*).) In this case, the plain language of section 1791.1 provides that goods which fail to meet *any* of the four conditions listed therein are in breach of the implied warranty.

We recognize that "an important consideration under the implied warranty is consumer safety." (*Brand v. Hyundai Motor America* (2014) 226 Cal.App.4th 1538, 1547 (*Brand*).) However, "vehicle safety is [not] the sole or dispositive criterion in implied warranty cases, which may turn on other facts." (*Id*. at p. 1548, fn. 2.) The cases

14

cited by SCJ to support its argument[10] involve situations where the vehicles at issue were alleged to have violated one of the first two conditions in section 1791.1; i.e., they did not pass without objection in the trade or they were not fit for the ordinary purposes in which they were used. Because an ordinary purpose of a motor vehicle is to provide safe and reliable transportation, it is reasonable to incorporate an element of safety into determining whether a particular vehicle would "[p]ass without objection in the trade" (§ 1791.1, subd. (a)(1)) or is "fit for the ordinary purposes" for which a vehicle is used (*id*., at subd. (a)(2)). (See *Isip, supra*, 155 Cal.App.4th at p. 27 ["Defining the [implied] warranty in terms of a vehicle that is 'in safe condition and substantially free of defects' is consistent with the notion that the vehicle is fit for the ordinary purpose for which a vehicle is used."].) We see no basis for incorporating, as SCJ argues, an implicit safety requirement into claims that a vehicle is not "adequately contained, packaged, and labeled," (§ 1791.1, subd. (a)(3)) or does not "[c]onform to the promises or affirmations of fact made on the container or label" (*id*., at subd. (a)(4)).

SCJ also argues that there must be an implied safety requirement for mislabeling claims under the Song-Beverly Act because, without that requirement, the Song-Beverly Act is merely duplicative of other California statutes prohibiting false advertising, such as the CLRA, the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.), and the False Advertising Law (Bus. & Prof. Code, § 17500 et seq.). But the Song-Beverly Act expressly provides that its "remedies . . . are cumulative and shall not be construed as

---

[10] *Keegan v. American Honda Motor Co. Inc*. (C.D. Cal. 2012) 838 F.Supp.2d 929 [tire and rear suspension defect]; *Carlson v. General Motors Corp*. (4th Cir. 1989) 883 F.2d 287 [defects in diesel engine]; *Skelton v. General Motors Corp*. (N.D. Ill. 1980) 500 F.Supp. 1181, reversed (7th Cir. 1981) 660 F.2d 311 [manufacturer installed inferior transmissions]; *Daugherty v. American Honda Motor Co., Inc*. (2006) 144 Cal.App.4th 824 [engine defect manifesting after warranty expired]; *Smith v. Ford Motor Co*. (N.D. Cal. 2010) 749 F.Supp.2d 980, affirmed (9th Cir. 2011) [manufacturer's nondisclosure of ignition-lock defect].

restricting any remedy that is otherwise available." (§ 1790.4.) Given the public policy favoring interpreting the Song-Beverly Act in such a way as to " 'bring its benefits into action' " (*Murillo*, *supra*, 17 Cal.4th at p. 990), the mere fact that there are other statutory schemes in California which provide remedies for mislabeling claims does not render the Song-Beverly Act's prohibitions surplusage, let alone mandate that we read a safety element into its terms.

SCJ relies on *Simgel Co*., *Inc. v. Jaguar Land Rover North America*, *LLC* (2020) 55 Cal.App.5th 305 (*Simgel*) for the proposition that any " 'mislabeling' of the Monroney and Supplemental sticker is insufficient to constitute a breach of the implied warranty of merchantability." *Simgel* is distinguishable and therefore does not assist SCJ.

In *Simgel*, the plaintiff appealed after the trial court granted the defendant's motion to vacate judgment in his favor or, alternatively, for judgment notwithstanding the verdict. (*Simgel*, *supra*, 55 Cal.App.5th at p. 309.) On appeal, the plaintiff argued, among other things, that the "jury's verdict was consistent with the judgment of liability for breach of implied warranty [under the Song-Beverly Act]." (*Id*. at p. 315.) The appellate court rejected this argument, noting the "jury answered the only question (question 10) concerning defendant's liability for breach of implied warranty in defendant's favor—that is, the 2014 Jaguar did *not* have 'a window defect in the first year of plaintiffs' ownership which rendered it not fit for the ordinary purpose of providing transportation.' *There was no other question on the verdict form relating to whether the implied warranty was breached*." (*Id*. at p. 316, second italics added.)

The court also rejected plaintiff's alternative attempt to support the verdict on the ground that the vehicle did not " '[c]onform to the promises or affirmations of fact made on the container or label' " under the Song-Beverly Act. (*Simgel*, *supra*, 55 Cal.App.5th at p. 320.) The trial court refused to include a question on this theory on the special verdict form because plaintiff had not presented any evidence to support it. (*Ibid*.) On appeal, plaintiff argued that the owner's manual describing how the windows worked, or

the failure of the dealership to disclose on the Monroney sticker or otherwise that the windows did not work constituted evidence of mislabeling. (*Ibid.*) The court was not persuaded, stating broadly: "An owner's manual or a [Monroney] sticker may be relevant to express warranty claims, but neither has anything to do with 'promises or affirmations of fact made on the container or label' (Civ. Code, § 1791.1, subd. (a)(4)), or with 'promises or facts by the manufacturer and/or dealer,' for purposes of establishing a breach of implied warranty." (*Ibid.*) The court goes on to assert that the "implied warranty of merchantability arises by operation of law and is a 'bulwark against fundamental defects' " citing *Brand*, *supra*, 226 Cal.App.4th at pages 1545 and 1550. (*Simgel*, *supra*, at p. 320.)

*Brand*, like the other cases on which SCJ relies, did not address the labeling provisions of the implied warranty but instead dealt with allegations that the vehicle would not "[p]ass without objection in the trade" (§ 1791.1, subd. (a)(1)) or was not "fit for the ordinary purposes" for which a vehicle is used (*id.*, at subd. (a)(2)). Accordingly, we are not persuaded by the *Simgel* court's reliance on that case to support SCJ's position that a safety element must be read into mislabeling claims under the Song-Beverly Act.

Unlike the plaintiff in *Simgel*, DeNike's claims of mislabeling are not based on a claim that the Monroney or supplemental sticker failed to disclose that some part of the vehicle was inoperable. Rather, his claims were based on SCJ's false representation that the vehicle left the factory as a hardtop and the stickers' false representation that the vehicle had not been modified. None of the cases SCJ cites involved a consumer expressly waiving claims under the first two implied warranty conditions (§ 1791.1, subd. (a)(1), (2)) and proceeding solely on the basis that a vehicle was mislabeled. Our research has disclosed no such cases. SCJ does not explain how proper labeling of a motor vehicle necessarily implicates an inquiry into its ordinary purpose of providing safe, reliable transportation. We must give the Song-Beverly Act a " 'construction calculated to bring its benefits into action.' " (*Murillo*, *supra*, 17 Cal.4th at p. 990.)

17

At the same time, "we will not read a requirement into a statute that does not appear therein." (*Moniz, supra*, 72 Cal.App.5th at p. 79.) Accordingly, we conclude there is no safety element that must be pleaded or proved in order to recover on a claim of mislabeling under the Song-Beverly Act.

As a result, SCJ has failed to show that the trial court misinstructed the jury on this cause of action.

*E. Injunctive relief under CLRA*

Finally, SCJ argues that the trial court erred in granting DeNike's request for a permanent injunction under the CLRA. The relief granted by the trial court directs SCJ to "[attach] an addendum sticker . . . as required by law" and disclose a vehicle's post-factory modification or additions to a customer "as required by law" yet the California Vehicle Code only requires supplemental stickers to be affixed to vehicles when the asking price exceeds the MSRP.

"Civil Code section 3422 allows the court to grant a permanent injunction 'to prevent the breach of an obligation existing in favor of the applicant: [¶] 1. Where pecuniary compensation would not afford adequate relief; [¶] 2. Where it would be extremely difficult to ascertain the amount of compensation [that] would afford adequate relief; [¶] 3. Where the restraint is necessary to prevent a multiplicity of judicial proceedings; or, [¶] 4. Where the obligation arises from a trust.' " (*Grail Semiconductor, Inc. v. Mitsubishi Electric & Electronics USA, Inc.* (2014) 225 Cal.App.4th 786, 800.) "The grant or denial of a permanent injunction rests within the trial court's sound discretion and will not be disturbed on appeal absent a showing of a clear abuse of discretion." (*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 390.) So "long as there exists 'a reasonable or even fairly debatable justification, under the law, for the action taken [by the trial court], such action will not be here set aside, even if, as a question of first impression, [the appellate court might

18

have taken] a different view from that of the court below as to the propriety of its action.' " (*Gonzales v. Nork* (1978) 20 Cal.3d 500, 507.)

After the jury returned its verdict on DeNike's claims for violation of the CLRA, intentional misrepresentation, and violation of the Song-Beverly Act, the trial court proceeded to rule on DeNike's request for injunctive relief. Following further briefing by the parties, the court issued an 11-page written decision in which it discussed SCJ's procedural objections, as well as its substantive arguments against the requested injunction.[11]

In that decision, the trial court noted that "the viability of injunctive relief here comes down to the extent of the threat of continuing CLRA violations as established by the evidence." We quote at length from the trial court's analysis of the parties' arguments on this issue: "[B]oth sides' positions on the likely threat of future violations, taken to their extremes, rest on speculation. While DeNike infers the existence of a vast conspiracy of greed to dump unwanted and stale auto inventory to explain what happened here, [SCJ] similarly infers that all that happened was the innocent and one-time incomplete installation of the [hardtop], thus explaining the absence of documentation that should have led to the accurate addendum (not Monroney sticker) being affixed to the Jeep at the time of sale in accordance with already established company protocols. But no actual evidence of either factual extreme was presented. In particular, [SCJ] offered no facts or theories at trial to explain just how the Jeep came to be sold to DeNike in its altered or modified condition or why there was no internal documentation reflecting

---

[11] The trial court also expressly noted that its decision on DeNike's request for a permanent injunction was based on its independent concurrence with the jury's conclusions that SCJ had committed specific violations of the CLRA. SCJ does not argue that DeNike's claim for injunctive relief is dependent on his claim for restitution under the CLRA, nor does SCJ challenge the trial court's finding that it violated the CLRA. "An appellate court is not required to examine undeveloped claims, nor to make arguments for parties." (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.)

replacement of the original soft top with the [hardtop] and no accurate addendum affixed reflecting this change and the costs associated with it. [¶] What is missing in defendant's emphasis on economics to ensure its future compliance with the CLRA when it comes to vehicles that are modified or 'altered' from their originally manufactured condition is acknowledgment of the consumer-protection purpose of full and accurate disclosure of material facts, regardless of whether a customer can be charged more money for the alteration. Here, for example, the testimony from DeNike, which is credited in the jury's verdict, is that because of the potential effect on the manufacturer's warranty, he didn't want a vehicle that was dealer-altered, no matter if the alteration increased the market value. The fact that defendant nonetheless sold him, in violation of the CLRA, a vehicle that had been modified or altered; the void in the evidence about how or why this occurred; the inconsistent understanding on the part of defendant's employees of internal documentary systems that arguably should have prevented the sale of the vehicle to DeNike in violation of the CLRA; and the seeming lack of recognition by defendant of the need to ensure its policies and procedures are sufficient to not just capture profit but to also satisfy full and accurate disclosure and compliance with the law are, in this court's view, collectively enough to warrant narrow injunctive relief to prevent recurrence of the CLRA violations established here."

As below, SCJ argues that the injunction is improper because: (1) DeNike "received a benefit" due to its failure to charge him for the dealer-installed hardtop; (2) there was no evidence to support the trial court's reference to the "potential effects" on the manufacturer's warranty; and (3) there was no evidence the violation was likely to recur. Each of these arguments was addressed in the trial court's decision, and the trial court explained that it based its decision in large part on SCJ's own evidentiary failures. For example, SCJ offered no evidence to explain how and when the hardtop was installed. Testimony from its own employees demonstrated an "inconsistent

understanding . . . of internal documentary systems that arguably should have prevented the sale of the vehicle."

Based on the record, there was a reasonable justification for the trial court's ruling and therefore we conclude that it did not abuse its discretion by granting the permanent injunction.

## III.  DISPOSITION

The judgment is reversed and the matter remanded to the trial court.  On remand, the trial court shall:  (1) vacate the verdict in favor of DeNike on his claim for restitution under the CLRA; (2) enter a new verdict in favor of SCJ on that cause of action; and (3) reinstate the jury's original verdicts on DeNike's intentional misrepresentation and Song-Beverly Act causes of action.  The parties shall bear their own costs on appeal.

_____
                                    Wilson, J.


WE CONCUR:




_____
        Elia, Acting P.J.




_____
        Danner, J.




DeNike v. Mathew Enterprise, Inc.
H046420

| Trial Court: | Santa Clara County Superior Court |
|---|---|
| | Superior Court No. CV273438 |
| Trial Judge: | Hon. Helen E. Williams |
| Counsel for Plaintiff/Respondent: Timothy DeNike | Rosner, Barry & Babbitt |
| | Hallen D. Rosner |
| | Gregory T. Babbitt |
| | Arlyn L. Escalante |
| Counsel for Defendant/Appellant: Mathew Enterprise, Inc. | Auto Legal Group |
| | Ali Kamarei |
| | Peter Reisenauer |
| | In-House Counsel, |
| | Mathew Enterprise, Inc. |

DeNike v. Mathew Enterprise, Inc.
H046420